# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re : | Chapter 11 |
| : | |
| FRASCELLA ENTERPRISES, INC., : | Bankruptcy No. 06-10322DWS |
| *dba* Cash Today, : | |
| : | |
| Debtor. : | |

# OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

    Before the Court is the Application of the Debtor to Employ Obermayer Rebmann Maxwell & Hippel LLP ("Obermayer") as Counsel (the "Application") and the objection (the "Objection") of Creditor Richmond Financial, Inc. ("Richmond") thereto. The Objection is supported by Lawrence Turner, Linda Davis and Demryi Hill (the "Consumer Class Plaintiffs"). Richmond and the Consumer Class Plaintiffs are the unsecured creditors whose asserted claims dominate this case. The United States trustee (the "UST") also participated in this contested matter and while taking no position on the Application, was troubled by Obermayer's disclosure failures as more fully discussed below.[1]

---

[1] The UST indicated that there were discussions with Obermayer about the appointment of an examiner. As will be apparent as I outline the issues that troubled the UST and precipitated the Objection, refusal to employ Obermayer, while a start, does not address the question of whether this debtor, acting through its principals, can fulfill the role of a debtor-in-possession.

**BACKGROUND**

On January 30, 2006 Frascella Enterprises, Inc. (the "Debtor") filed a petition under Chapter 11 of the Bankruptcy Code. The Debtor's Schedules and Statement of Affairs as well as the Application were filed contemporaneously therewith. The Application was supported by the Affidavit of Edmund George, Esquire ("George") that can only be described as bare bones. Doc. No. 5. As to Obermayer's relationship with the Debtor, George simply states that the firm has represented the Debtor prior to the institution of these proceedings, and it is not a creditor of the debtor. Perhaps in anticipation that this revelation may be insufficient, he then states, "Obermayer will supplement this affidavit if and when necessary to disclose any further pertinent relationships that require disclosure." Id. ¶ 6. On this basis, George declared his belief that Obermayer was eligible for employment under § 327 and the applicable Bankruptcy Rules.

Richmond quickly filed the Objection on February 1, 2006 contending otherwise, and a hearing was scheduled for March 6, 2006. In support of its opposition to Obermayer's retention, the Objection avers that Obermayer is present counsel for the Debtor, Larry Frascella ("Larry"), David W. Frascella, Jr. ("David" and with Larry, the "Frascella Brothers") and Theresa Frascella ("Theresa") who is the Debtor's landlord, in certain litigation (the "Richmond Litigation") commenced by Richmond,[2] and that Larry and

---

[2] The gravaman of the Richmond Litigation is that Larry and David, doing business as Broad and Vine Check Cashing, Inc. ("Broad and Vine"), secured credit for their check cashing business from Richmond and that when the indebtedness reached approximately $700,000, Larry and David announced that Broad and Vine was defunct and had been replaced by The Debtor. A lease agreement between The Debtor and Theresa for the space previously occupied by Broad and Vine
(continued...)

-2-

David's legal bills in the Richmond Litigation have been paid by the Debtor. Larry and David each own a 50% interest in the Debtor. In addition to the alleged conflict arising from representation in the Richmond Litigation, Richmond complains of Obermayer's representation of the Debtor, David and Larry in connection with litigation commenced by the Consumer Class Plaintiffs (the "Consumer Class Litigation.")[3] The Objection further avers that Obermayer received payments prior to the filing of the case that were preferential.

In response to the Objection, George filed an Amended Affidavit (the "Am. Aff.") on February 27th, apparently concluding that given the Objection, the time for disclosure had been reached. It seeks to address the points raised by Richmond and nothing further. As to the prior representation of the Debtor, George acknowledges that the firm represented the Debtor in the Richmond Litigation. However, while stating that it filed preliminary objections on behalf of all of the defendants, i.e., the Debtor, Larry, David and Theresa, George explains its work was limited to a challenge to the legal sufficiency of the complaint. He avers that it was "expressly understood and agreed that if the litigation progressed beyond this challenge, that some or all of the Individual Defendants might obtain separate counsel and that Obermayer would continue its representation of the Debtor." He further states that

---

(...continued)
was produced. The lease is not disclosed in The Debtor's Schedule G (Schedule of Executory Contracts) although the Vendor List appended to the Statement of Affairs as SOFA 3b shows monthly payments to Theresa of $7,680 on November 1, December 1 and December 30. While Richmond avers that Theresa is also a creditor based on the lease, she is not listed as such on Schedule E.

[3] Both pieces of litigation have been removed to this Court by the Debtor, and the Consumer Class Litigation is the object of motions by each side for relief. The Consumer Class Litigation seeks redress for certain allegedly usurious short term loans made to the consumers by the Frascella Brothers through the Debtor and other entities they own and control.

"Obermayer has not asserted any factual or legal positions for Theresa Frascella, who has been represented generally by other counsel," a curious statement in light of the filing made on her behalf. Exhibit R-2. Am. Aff. ¶ 6. A similar statement is conspicuously not made about David and Larry. George likewise acknowledges representation of the Debtor in the Consumer Class Litigation against the Debtor, Larry and David. Notably the Richmond and Consumer Class Litigation were removed to this court in their entireties. No one has entered an appearance for the Individual Defendants, and Obermayer is objecting to a motion to sever the Individual Defendants from the removed action and remand to the state court. Adv. No. 06-0101. (Doc. No. 11).[4]

On the fee issue, George provides a spreadsheet of the prepetition payments Obermayer received "in the ordinary course of business pursuant to agreed terms of billing," concluding that they were either on a retainer basis and not a preference, or payments in the ordinary course of business and insulated from avoidance as preferential payments. Am Aff. ¶ 10. Again George assures that "Obermayer will supplement further if and when necessary" etc. Id. ¶ 11.

On March 3, 2006 Richmond filed a Reply Memorandum attaching an affidavit of Daniel S. Bernstein, 3d, Esq., its counsel in the Richmond Litigation. (Doc. No. 43.) That affidavit avers that Obermayer filed document requests and interrogatories on behalf of all the defendants, not just the Debtor. Copies of the pleadings attached to the affidavit substantiate Obermayer's representation of all the parties. The Bernstein Affidavit also avers

---

[4] George also belatedly discloses work his firm is currently doing for other creditors of the estate, none of which relate to this bankruptcy case.

that Obermayer drafted a confidentiality order for all defendants and represented that it would produce documents on behalf of all defendants.

A hearing was held in this contested matter on March 6, 2006. George provided testimony in support of the Application. On direct examination, he explained the payments his firm had received on the eve of bankruptcy which as noted above, were outlined in an attachment to his Amended Affidavit. A January 30, 2006 payment of two invoices totaling $7,854.40 was described as "in the ordinary course" for legal services rendered to the Debtor during the period November 1 through November 30 and November 14, 2005 through November 18, 2005. While George stated his belief that the payment was not preferential, he stated that the firm would willingly disgorge it if the UST believed otherwise. Two wire transfers of $50,000 each were also received on January 30, 2006 to pay January 30, 2006 invoices of $68,937.35, $5,425.20, $269.31 and $868.50 with the balance of $24,499.64 to be held as a retainer. George was not questioned on the nature of the legal services rendered so as to generate all these invoices on January 30 but stated with uncharacteristic clarity given his vague responses to related questions, that all of the services were provided to the Debtor and not other entities owned by the Debtor's principals Larry and David Frascella. George was specifically asked the source of one of the $50,000 wire transfers which was identified only as "From 3d Party." He responded that "sitting here today, I don't know but it is not Larry and David Frascella." He agreed to inquire further.

George was also examined about Obermayer's clients. He insisted that the Debtor was the firm's sole client, that it did not represent Theresa Frascella or David and Larry, although his testimony was less equivocal with respect to Theresa. He acknowledged and

-5-

then sought to justify the firm's actions in entering an appearance and filing preliminary objections and initial discovery on behalf of all parties in the Consumer Class Litigation and in the Richmond Litigation as a reflection of their "community of interest." He stated that Theresa had her own attorney and David and Larry were advised that Obermayer could not represent them and that they were presently talking to a separate attorney. His testimony suggested that their discussions with the separate attorney were stimulated by the Objection to the Application. George was asked about the removal of the two adversary cases and acknowledged that Obermayer removed all claims, not merely claims against the Debtor. Again he attributed that step to the "community of interest" among all the defendants. He was asked about the firm's position on the Motion to Sever and Remand filed by the Consumer Class with respect to its claims against the non-debtors. He asserted no knowledge of that motion which had been filed February 27, 2006 in the adversary case in which he was listed as lead counsel. He did give assurances that Obermayer would not be taking any position in that matter on behalf of Larry and David whom are not represented by Obermayer. On March 14, 2006, Obermayer filed a 9-page brief with six exhibits opposing the motion to sever and remand to state court the claims against David and Larry. The pleading was filed on behalf of the Debtor and not Larry and David. Indeed no counsel has appeared in either the main bankruptcy case or the two pending adversary cases on behalf of Larry and David.

George was also questioned about the ownership of certain entities allegedly related to the Debtor. He stated that he did not know who were the principals of Frascella Enterprises of Delaware ("Frascella Delaware"), JDL Services ("JDL") or Ambassador

Financial Services ("Ambassador"). However, he contradicted his own testimony by later acknowledging that JDL was owned by Larry and David. It was also elicited that George had filed an expedited motion for authority to make prepetition payroll to 14 employees, including Larry and David. When objections were filed, the request as to them was withdrawn. They have now agreed not to take compensation from the Debtor. Rather their salaries are being paid by JDL.

Finally on questioning by the UST, George agreed to make certain inquiries to supplement the record. A Supplemental Disclosure in Support of the Application was filed on March 15, 2006. Doc. No. 50. In this document, George revealed that the unidentified source of the $50,000 wire transfer was Larry and David who as Ambassador's shareholders used that corporation's funds to supplement the payments made by the Debtor to pay Obermayer's invoices and provide a retainer. After being prompted by Richmond's objection, George also disclosed the transfer of the Debtor's short term loan portfolio in the face amount of $1.2 million to Ambassador in consideration of the payment to County Bank of $120,000 and the assumption of liabilities relating to the portfolio.[5] He also revealed that Obermayer entered into an engagement letter in 2005 with the Debtor and Ambassador related to legislation on payday lending. George did not know who Obermayer is representing in the Consumer Class Litigation and notwithstanding an agreement to find out,

---

[5] In June 2005 a FCC ruling put County Bank, which made the loans in which the Debtor participated, out of the short-term lending business. The Debtor allegedly bought the loan portfolio and then transferred it to Ambassador which would carry on the payday lending business formerly operated by the Debtor. It is not clear whether the $120,000 payment to County Bank is the consideration for the buy out of the loans nor does George inform what liabilities of $2.02 million Ambassador assumed relating to the payday loan portfolio. Is he talking about the liability for payment of the investor notes?

has not disclosed who his colleague Mr. Sams is acting for in discussions with Consumer Class Plaintiffs' counsel in that case.

Before a further scheduled hearing was held on March 20, 2006 Richmond filed a Supplemental Memorandum in Support of its Objection setting forth facts it gleaned at the § 341 meeting to further corroborate its view that the Application must be denied. The evidentiary basis of these contentions was made part of the record on March 20. Testifying for the Debtor at the § 341 meeting was its "chief financial officer" Chance Minor ("Minor"). Exhibit R-1. Both Larry and David were out of the state on business.[6] Minor, who is not an employee of the Debtor but of JDL, was the signatory on the Debtor's Schedules and Statement of Affairs. JDL was described as a management firm that provides services to the Debtor and is now the source of Larry and David's compensation. Minor disclosed that Frascella Delaware, a Delaware payday lender, is a wholly owned subsidiary of the Debtor. Although an operating company, no value was ascribed to its shares on the Debtor's Schedules. Since the Debtor's monthly receipts of $35,000 do not cover its expenses of $65,000, Frascella Delaware funds the shortfalls. Id. at 9.

Minor also explained the Debtor's interaction with Ambassador, the affiliated New Mexico payday lender. The family and friends of Larry and David had invested in the Debtor. On December 15, 2005 shortly before the bankruptcy filing, payments of principal and/or interest were made on account of these investor notes. Thereafter the notes

---

[6] Notably Larry and David have never appeared at any of the hearings or the § 341 held in this matter. Given the deficiency in the knowledge of their delegate, the UST kept the record of the § 341 meeting open for their testimony pending resolution of this contested matter.

were moved to Ambassador because according to Minor, the Debtor could no longer service them. As noted above, it is not clear whether the assignment of the loan portfolio which the Debtor had recently purchased from County Bank was the *quid pro quo* for the transfer.[7] Ambassador also provides funds to the Debtor and has its registered office in the same building owned and occupied by the Debtor in Langhorne, Pennsylvania. Exhibit R-5 and R-6. Richmond also notes that Jeffrey Batoff, Esquire, the Obermayer partner who appears to be in charge of the Debtor's legal affairs,[8] and Nicholas Poduslenko, another partner, are on the advisory board of William Batoff Associates ("WBA") whose clients are the Debtor, Ambassador and Frascella Delaware. Exhibit R-3 and R-4.[9]

As Richmond had only provided its Supplemental Memorandum and attached exhibits the morning of the hearing, I allowed George ten days to supplement the record. In a letter dated March 31, 2006, he advises me that no further factual submissions will be made. Accordingly, the matter is ripe for decision.

**DISCUSSION**

I.

Section 327(a) of the Bankruptcy Code authorizes the Debtor as debtor-in-possession to employ attorneys that "do not hold or represent an interest adverse to the estate, and

---

[7] See p. 7 supra.

[8] Jeffrey Batoff appears as the senior attorney in the litigation pleadings and has affixed his name to the Response to the Motion to Sever above that of George.

[9] Obermayer responds that these are unpaid positions which do not involve day-to-day input into WBA's operations and as such, did not warrant disclosure in this bankruptcy case.

that are disinterested." A disinterested person is, inter alia, not a creditor. 11 U.S.C. § 101(14)(A). A creditor is an entity that has a claim against the debtor that arose pre-petition. Id. § 101(10)(A). Section 327(a) is implemented by Federal Rule of Bankruptcy Procedure 2014 which proscribes the contents and procedure for an application seeking an order approving the retention of counsel.

Of particular relevance to this contested matter is Rule 2014's requirement to state "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest...." Fed.R.Bankr.P. 2014(a). Of such importance are these disclosures that they must be contained in a verified statement of the person to be employed. Id. Only by being able to assess the connections an attorney has to the debtor, creditors and any other party in interest is the court (and the United States trustee) able to determine whether the attorney holds an adverse interest or is not disinterested. In re Leslie Fay Companies, Inc., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994). As correctly noted by Richmond, the duty of disclosure is therefore not discretionary. In re EWC, 138 B.R. 276, 280 (Bankr. W.D. Ok. 1992). Nor does it leave to the attorney a judgment as to what connections are sufficiently material as to require disclosure. Id. (professionals cannot pick and choose which connections are irrelevant or trivial). Finally the failure of an attorney to properly discharge his disclosure duties to the court provides an independent ground for disqualification. In re 22 Acquisition Corp., 2004 WL 870813, at *8 (E.D. Pa. May 13, 2003); In re eToys, Inc., 331 B.R. 176, 196-97 (Bankr. D. Del. 2005).

In this case, Obermayer appears to have lost sight of these fundamental principles. The initial George affidavit in support of the Application reveals only that Obermayer

"has represented the Debtor prior to the institution of these Proceedings." Affidavit ¶ 5. His promise to supplement his affidavit "if and when necessary to disclose further pertinent relationships that require disclosure" does nothing to ameliorate the breach of the duty of disclosure which became apparent when the further disclosures were wrested from the firm.[10] Their content was known to Obermayer when the case was filed and were only made "necessary" because of the actions of third parties who extracted the information out of the firm by pressing objections to the Application. In the Amended Affidavit, George now appears to understand he has to disclose Obermayer's connections to the case.

In the Amended Affidavit George actually tells us in what manner Obermayer represented the Debtor prepetition and reveals for the first time that it also represented Larry, David and Theresa Frascella although "not substantively" but rather as "me too" defendants in the Richmond Litigation. Am. Aff. ¶ 6. While he acknowledges that the firm has represented the Debtor in the Class Action, he is silent about any advice or representation of the Frascella Brothers in that case. The Amended Affidavit discloses other connections to creditors of the Debtor and presents its response to the charge that the firm represented Theresa Frascella, who it "believes" to be the Debtor's landlord. Regrettably this untimely disclosure is still not a complete one.

---

[10] I am unpersuaded by George's reliance on this statement in his later affidavit to suggest he was mindful of his duty to disclose. Nor am I persuaded that the fact that the Application had to be filed at the inception of the case resulted in this lack of disclosure. I have found that Obermayer was actively representing the Debtor and the Frascella Brothers in the two litigations that are at the heart of this case and which appear to have been the moving force for its filing. This information was known to the firm, if not George. George's testimony at the initial hearing was vague, elusive and even contradictory at one point. Even if others at the firm failed to inform him of all the relevant facts, he signed the Affidavit on behalf of Obermayer and he had the duty to make reasonable inquiries which, analyzing the facts in the best light, he did not do.

In response to the allegation that Obermayer's prepetition receipt of payments were preferential, George attaches a spread sheet that discloses the payments the firm received in the 90 day preference period, including two in the amount of $50,000 each on the date the petition was filed: one was cryptically noted to be "From 3rd Party." It took further objection and inquiry for Obermayer to feel it was "necessary" to reveal in a Supplemental Disclosure that the source of the retainer was Larry and David drawing upon the funds of another one of their entities, Ambassador. Exhibit D-1 ¶ 2. See Neben & Starett, Inc. v. Chartwell Financial Corp., 63 F.3d 877, 880 and n.5 (9th Cir. 1995) (failure to disclose that debtor's principal, not debtor, paid the retainer out of his personal account was a violation of Rule 2014 even though there was insufficient proof that a conflict existed). Although money is fungible, George states that the check Larry and David wrote on Ambassador's account was applied to unpaid prepetition time[11] whereas the check Larry and David wrote on the Debtor's account paid certain "ordinary course" legal bills with the balance of $24,499.64 held as a retainer. Exhibit D-1 ¶ 2.

The Supplemental Disclosure also reveals for the first time a sale of the Debtor's short-term loan portfolio valued at $1.2 million to Ambassador. Id. ¶ 3. Notably this transaction which represented the cessation of one of the Debtor's two lines of business was not disclosed in the Statement of Affairs. It only came to light, as did the other disclosures in this third effort by George to fulfill his duty of disclosure, in response to Richmond's

---

[11] This allocation conveniently circumvents the preference statute since there is no transfer from the debtor but one from a third party.

objection. Since George contends that the reason for this Chapter 11 case is to restructure the Debtor in light of the termination of the payday lending business, it is hard to understand why this significant transaction would not have been disclosed. When questioned about the matter by the Court, George had no explanation. While it is true that this information would not have been required in furtherance of the Application unless Obermayer had handled the sale transaction (its involvement is still not acknowledged or refuted),[12] the failure to disclose the loan portfolio sale does shed light on Obermayer's fitness for the role it seeks in this case. This and other breaches of its disclosure duty indicate that Obermayer is not prepared to be candid with the Court, and will not insist that the Debtor, speaking through the Frascella Brothers who have many potential conflicts in this case, exercise its fiduciary duty under the Bankruptcy Code.

In short, the staged disclosures made in direct response to creditor pressure evidences a deliberate choice by Obermayer to reveal as little information as possible. Disclosure must not only be full, it must be timely. Even after three tries, George's disclosures still obfuscate the facts. Had the creditors been less persistent and less knowledgeable about the affairs of the Debtor and the Frascella Brothers, I am convinced that the information in the second and third disclosure documents might have never come to light. This is apparent from the Debtor's request that I authorize Obermayer's appointment based on the bare bones and

---

[12] George only now states that in 2005 Obermayer entered into an engagement letter with the Debtor and Ambassador related to legislation on payday lending. Exactly what the scope of that engagement was and how it was related to the sale transaction which was prompted by Pennsylvania legislation which restricted payday lending is not addressed.

conclusory initial affidavit that supported the Motion. This record supports denial of the Application without regard to the actual and potential conflicts between the Debtor, its principals, and their related entities and the payments made to Obermayer on the eve of the filing.

## II.

While I have concluded that Obermayer's abdication of its duty of disclosure is an independent basis to deny the Application, I also find that the facts as ultimately disclosed reveal potential and/or actual conflicts of interest which further support my ruling.

While averring that the firm neither represented nor intends to represent the Frascella Brothers in this case and the related litigation removed here, the evidence is to the contrary. George's statement that Obermayer did not "substantively" represent the non-debtors in filing pleadings on their behalf is nonsense. The firm filed pleadings and took discovery; thus it represented the parties on whose behalf these actions were taken. This is proof that Obermayer has represented these non-debtors. Actions for the benefit of the non-debtors continue even though Obermayer does the affix those clients' names to its pleading. The Consumer Class Plaintiffs have filed a Motion to Sever and Remand the Class Action Litigation which is directed solely at the non-debtor defendants. George testified that Obermayer would not be taking a position in this matter for Larry and David. Yet no counsel appear to oppose the Remand Motion on behalf of Larry and David. Rather that task is left to Obermayer "on behalf of the Debtor." Nor have counsel appeared for Larry and David in the Richmond Litigation, and George's testimony about his firm's advice to them to get

other counsel appears to be a reaction to the Objection rather than any clear statement of its inability to represent them made at the inception of this case.

It also appears that Obermayer's handling of this Chapter 11 case is intended to insulate Larry and David, neither of whom appeared for the Debtor at the § 341 meeting and neither of whom verified any documents in this case. While both claimed to be out of town on the date of the § 341 meeting, sufficient notice was provided so that at least one of them could have been available for this important event in the life of a Chapter 11 case. Having sought relief from this Court, it behooves the Debtor to present its officer with knowledge of the case to testify under oath. Rather the Debtor's spokesperson has been Chance Minor who is not even an employee of the Debtor but of JDL, another Frascella entity that performs management services for the Frascella entities. His testimony was so incomplete due to his lack of knowledge of the Debtor's affairs that the § 341 meeting could not be completed. Exhibit R-1.

While Obermayer suggests that its actions on behalf of the Debtor and its principals are in furtherance of a "community of interest," I believe the potential conflict they hold is more harmful to the Debtor than any economy flowing from this common interest. Thus, while it may be true that all parties have a common interest in defeating the claims made by Richmond and the Class Plaintiffs, the culpability of the Debtor and Larry and David could be different. Common counsel exercising no independent judgment on behalf of the Debtor would not be able to pursue that distinction. This is especially the case when the allegation is that the Frascella Brothers are using various corporations to harm

the Debtor's creditors. One small example brings that conclusion into focus. Obermayer, on behalf of the Debtor, requested that it be allowed to pay its employees pre-petition wages. Included in that request was Larry and David's paychecks. When there was opposition to this payment as a preference being made to insiders, the request was withdrawn. The two owners are now being paid by JDL, another of their entities. Query, if it is appropriate and permissible for JDL to pay the Frascella Brothers, why did counsel request payment to them under the "necessity doctrine?"

A larger example of the problem which results when counsel's loyalty and obligation is divided is the transfer of the loan portfolio from the Debtor to Ambassador, another related entity. While George recites facts that would have one believe this transfer to be for fair consideration, the Frascella Brothers have an interest in retaining the benefit of that transaction for their related company while the Debtor's creditors are questioning it as draining the estate of a valuable asset. Moreover, to finance the Debtor's business, certain investor notes had been created and sold to friends and family of the Frascella Brothers. Prior to the sale of the portfolio and on the eve of the bankruptcy, substantial payments were apparently made to these noteholders. The Debtor's interest in avoiding these transfers, if preferential, conflicts with the Frascella Brothers' wish to have their family and friends paid by the corporation.

The Objection presents other problems with Obermayer's role in this case. I do not think it is necessary to prolong this discussion by addressing each point. Suffice it to say that the conflicts inherent in the legal undertakings by Obermayer on behalf of the Debtor and the

Frascella Brothers bolsters my conclusion that the Application should be denied.[13] An Order consistent with this Opinion shall be issued.

*Diane W. Sigmund* (signature)

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated: April 12, 2006

---

[13] Richmond also contends that Obermayer received a preference and is therefore not disinterested since the avoidance of the prepetition payment of legal fees would make the firm a creditor. Obermayer disputes that any of the payments it received prepetition of its outstanding legal bills will qualify as preferences. Its backup position is that if the UST concludes there has been a preference, it will pay the money back. In In re Pillowtex, 304 F.3d 246, 253 (3d Cir. 2002), the Third Circuit Court of Appeals rejected a similar pragmatic response to the allegation that the receipt of a preference rendered the professional not disinterested. In that case, the parties recognized that if a preference was established, the money would have to be returned to the debtor, leaving the professional once again a creditor. The law firm agreed to waive the resulting claim if that should occur. The Court found that the bankruptcy court could not avoid the clear mandate of the statute by approving retention conditional on a later determination of the preference case. Based on Pillowtex, I would have to make a determination of whether Obermayer received a preference before approving its retention. Since I have concluded that its employment for the Debtor is otherwise not permissible under § 327, I need not reach that issue at this time.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FRASCELLA ENTERPRISES, INC., *dba* Cash Today, | : | Bankruptcy No. 06-10322DWS |
| | : | |
| Debtor. | : | |

## ORDER

**AND NOW**, this 12th day of April 2006, upon consideration of the Application of the Debtor to Employ Obermayer Rebmann Maxwell & Hippel LLP as Counsel (the "Application") and the objection (the "Objection") of Creditor Richmond Financial, Inc., after notice and hearing and for the reasons stated in the accompanying Opinion;

It is hereby **ORDERED** that the Application is **DENIED**.

*Diane W. Sigmund*

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Copies to:

Edmond M. George, Esquire
OBERMAYER REBMANN MAXELL
& HIPPEL LLP
1900 One Penn Center
1617 J.F.K. Boulevard
Philadelphia, PA 19103

Jonathan J. Bart, Esquire
SILVERMAN BERNHIEM & VOGEL
Two Penn Center Plaza
Suite 910
Philadelphia, PA 19102

Gary David Bressler, Esquire
ADELMAN LAVIN GOLD AND LEVIN
Four Penn Center - Suite 900
Philadelphia, PA 19103-2808

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107